# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SAMMIE R.[1], | ) |
| | ) |
|       **Plaintiff,** | ) |
| | )   No. 16 CV 6358 |
| v. | ) |
| | )   Magistrate Judge Jeffrey Cummings |
| NANCY BERRYHILL, | ) |
| **Acting Commissioner of Social** | ) |
| **Security,** | ) |
| | ) |
|       **Defendant.** | ) |

## MEMORANDUM OPINION AND ORDER

Jeffrey Cummings, United States Magistrate Judge:

For the reasons set forth below, claimant's motion for attorney fees pursuant to the Equal Access to Justice Act (Dkt 47) is granted in part. Claimant's counsel is awarded $27,064.80 in fees and costs.

## I.    Procedural History and Legal Standard

On June 20, 2016, Sammie R. ("claimant") filed this action seeking reversal of the decision of the Administrative Law Judge ("ALJ") denying his applications for Disability Insurance Benefits and Supplemental Security Income. On May 10, 2017, Magistrate Judge Michael Mason denied claimant's motion for summary judgment and upheld the decision of the ALJ. (Dkt. No. 28.) Claimant appealed, and on April 23, 2018, the Seventh Circuit reversed the

---

[1] In accordance with Internal Operating Procedure 22 - Privacy in Social Security Opinions, the Court refers to plaintiff only by his first name and the first initial of his last name.

decision of the ALJ and remanded this matter back to the Social Security Administration for further proceedings. *Rainey v. Berryhill*, 731 F. App'x 519 (7th Cir. 2018).

Claimant now seeks $34,663.58 in fees and costs pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. Under the EAJA, a court may award reasonable fees and costs if (1) the claimant was a prevailing party; (2) the Commissioner's position was not substantially justified; (3) there are no special circumstances that would make an award unjust; and (4) the claimant files a complete and timely application. 28 U.S.C. § 2412(d)(1)(A)-(B); *Stewart v. Astrue*, 561 F.3d 679, 683 (7th Cir. 2009).

The Commissioner does not dispute that claimant was the prevailing party, that he filed a timely application, or that any special circumstances exist that would make an award unjust. Instead, at issue here is whether the Commissioner's position was substantially justified, and if it was not, whether the fee award claimant seeks is reasonable. We address each issue in turn below.

## II. Analysis

### A. Substantial Justification

The Commissioner first argues that her position was substantially justified, thereby precluding an award of fees. The Commissioner bears the burden of proving that her position was "substantially justified." *Golembiewski v. Barnhart*, 382 F.3d 721, 724 (7th Cir. 2004). A position is substantially justified if "a reasonable person could conclude that the ALJ's opinion and the commissioner's defense of the opinion had a rational basis in fact and law." *Bassett v. Astrue*, 641 F.3d 857, 859 (7th Cir. 2011). Under this standard, the "Commissioner's position may be substantially justified even if it turns out to be completely wrong." *Id*; *see also Blanchard v. Berryhill*, No. 16 CV 2117, 2017 WL 5191846, at *1 (N.D. Ill. Nov. 9, 2017) ("The

2

EAJA does not require that the agency's arguments be correct in order for them to be substantially justified…"). Additionally, "[w]hile the parties' postures on individual matters may be more or less justified, the EAJA – like other fee-shifting statutes – favors treating a case as an inclusive whole, rather than as atomized line items." *Commissioner, INS v. Jean*, 496 U.S. 154, 161 (1990); *see also Stewart*, 561 F.3d at 683-84 ("EAJA fees are not determined by the number of successful arguments, but a party's success on a single claim will rarely be dispositive of whether the government's overall position was substantially justified.").

The Supreme Court has "entrusted the question whether the commissioner's position is substantially justified to the discretion of the district court, in no small part because the analysis is not susceptible to a firm rule or even a 'useful generalization.'" *Basset*, 641 F.3d at 859, *quoting Pierce v. Underwood*, 487 U.S. 552, 561-62 (1988). Nonetheless, certain guidelines have emerged. Generally speaking, a run-of-the-mill error in articulation by itself is not enough to render the Commissioner's position unjustified. *Bassett,* 641 F.3d at 860. Such an error in articulation might occur when the ALJ offered merely a "cursory and inadequate" analysis of an important point or failed to "connect all the dots in the analysis." *Id.* at 859-60 (quotations omitted). On the other hand, the Commissioner's position is less likely to be justified if the ALJ and the Commissioner "violated clear and long judicial precedent and violated the Commissioner's own Ruling and Regulations." *Golembiewski*, 382 F.3d at 724. Further, "[s]trong language against the government's position in an opinion discussing the merits of a key issue is evidence in support of an award of EAJA fees." *Id*.

Here, though she does not say as much, the Commissioner appears to argue that the ALJ's errors, and her defense thereof, amount to no more than run-of the mill errors in articulation. The Commissioner reiterates arguments made before the district court and the

Seventh Circuit in an effort to show that the ALJ's decision was substantially justified under the applicable regulations and precedent. In doing so, however, the Commissioner minimizes or otherwise ignores the strong language of the Seventh Circuit in its order remanding this matter.

As the Seventh Circuit explained, claimant applied for benefits due to complications related to strokes he suffered in 2009 and 2011. His past employment includes work as a switchboard operator and a CTA bus driver for eleven years. He was unable to return to the CTA after he suffered a strike in 2011. Following his stroke, claimant complained of persistent right-sided weakness and relied on a cane for balance, which was confirmed by several physicians of record.

On appeal to the district court and the Seventh Circuit, claimant argued that the ALJ erred in assessing his credibility, determining his residual functional capacity, and concluding that he could perform his past work. Though Magistrate Judge Mason rejected these arguments, the Seventh Circuit concluded that remand was appropriate on each issue.[2]

First, with respect to credibility, the Seventh Circuit agreed that the ALJ failed to adequately justify his credibility finding. Though the Court acknowledged that ALJs can and should consider a claimant's daily activities, the ALJ "must also explain how the claimant's activities are inconsistent with medical evidence." *Rainey*, 731 F. App'x at 522 (citing *Stewart*, 561 F.3d at 684). Absent such an explanation, the Seventh Circuit failed to see how claimant's use of a stove or his ability to shop with a friend was inconsistent with the medical evidence.

---

[2] It is worth noting that Magistrate Judge Mason's opinion affirming the ALJ's opinion does not alone render the Commissioner's position substantially justified. *See Price v. Berryhill*, No. 13 CV 1160, 2017 WL 1301276, at *2 (S.D. Ill. Apr. 7, 2017) ("As the Seventh Circuit has stated, if it is apparent from our opinion that we think the government lacked a substantial justification for its position, though the [district] judge had thought it not only substantially justified but correct, he must bow.") (internal quotations omitted).

4

*Rainey*, 731 F. App'x at 522-23.  The Court also rebuked the ALJ's failure to credit Claimant's long and constant work history, and ultimately concluded that the ALJ's "flawed credibility assessment warrants remand." *Id*. at 523.

Next, the Seventh Circuit explained that the ALJ made "no effort to 'build an accurate and logical bridge'" between what claimant's treating physicians documented in their reports and his conclusion that claimant was not reliant on his cane.  *Rainey*, 731 F. App'x at 523, *quoting Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014).  Although the record included "perfunctory" notations to a normal gait and the ability to walk on his toes and heels, the Seventh Circuit believed that the ALJ improperly weighed those notations in the context of the record. *Rainey*, 731 F. App'x at 523.  The Court also held that the ALJ failed to give sufficient weight to the 2014 examination of treating physician Dr. Rosenstein.  Specifically, the Court determined that the ALJ "did not explain why he discounted Dr. Rosenstein's opinion, and he fail[ed] to address the factors identified by the regulations to determine how much weight to give a treating physician's opinion." *Id*.  (citing 20 C.F.R § 404.1527(c)(2)-(5)).[3]

Lastly, the Seventh Circuit took issue with the ALJs step four finding that claimant could perform his past work as a switchboard operator, which the vocational expert found akin to a receptionist under the Dictionary of Occupational Titles.  The Court explained that the receptionist job included tasks that claimant's switchboard position never entailed.  The Court further faulted the ALJ for failing to do a function-by-function analysis of claimant's past work, noting that "such an analysis would have revealed that [claimant] lacked both the requisite keyboarding skills and walking ability to perform the switchboard job." *Rainey*, 731 F. App'x at

---

[3] The treating physician rule has been eliminated by new regulations, *see 20* C.F.R. § 404.1520c. However, the rule continues to apply for claims filed before March 27, 2017.

5

524. The Court disagreed that the ALJs errors in this regard were harmless. Indeed, had the ALJ proceeded to step five, claimant "would have been found presumptively disabled under the agency's medical vocational guidelines" if the ALJ determined he was limited to sedentary work. *Id*. (citing 20 C.F.R. Pt. 404, Subpart P, App. 2 § 200.00 *et seq*.).

Upon reviewing this case as an "inclusive whole," the Court concludes that the Commissioner's position was not substantially justified. To begin, as in *Golembiewski v. Barnhart*, the Seventh Circuit did not "reject any issue raised by the plaintiff on appeal nor did [the Court] adopt or affirm any position taken by the Commissioner." 382 F.3d at 725. The Seventh Circuit's use of "strong language" against the government's position here further establishes a lack of substantial justification. *See Rainey*, 731 F. App'x at 522-524 ("The ALJ's flawed credibility assessment warrants remand;" "The ALJ also made "*no effort* to build an accurate and logical bridge…;" [The ALJ] fails to address the factors identified by the regulations to determine how much weight to give a treating physician's opinion.") (emphasis added).

More importantly, the majority of the ALJ's shortcomings go beyond run-of-the-mill errors in articulation. With respect to the credibility assessment, among other things, the ALJ failed to explain any inconsistencies between the claimant's daily activities and the medical evidence. He also failed to consider the factors set forth in the treating physician rule, 20 C.F.R § 404.1527, and made no comparison between the requirements of claimant's past job and his current abilities. *See Nolen v. Sullivan*, 939 F.2d 516, 519 (7th Cir 1991).

Courts have found similar violations of regulations and judicial precedent to support an award of EAJA fees. *See, e.g.*, *Stewart*, 561 F.3d at 684 (finding the ALJ's failure to explain any inconsistencies between claimant's daily activities and the medical evidence contrary to judicial

6

precedent); *Rankin v. Colvin*, No. 13 CV 50197, 2015 WL 4601180, at *2 (N.D. Ill. July 30, 2015) (finding the Commissioner's position was not substantially justified when the ALJ failed to consider the factors of the treating physician rule); *Blackmon v. Colvin*, No. 14 C 0184, 2017 WL 403563, at *2 (N.D. Ill. Jan. 30, 2017) (determining that a failure to follow the treating physician rule supported an EAJA fee award). In sum, this Court concludes that the Commissioner's position here was not substantially justified and that an award of EAJA fees is appropriate.

      B.      **The Reasonableness of Claimant's Proposed Fee Award**

            1.      **Hourly Rate**

The Commissioner takes issue with two aspects of Claimant's proposed fee award. First, the Commissioner asserts that claimant's proposed hourly rate of $190.20, which is based on the national Consumer Price Index ("CPI") for January 2016 (the last full year before the legal work began) is too high. According to the Commissioner, the EAJA award should be calculated using the regional CPI, resulting in an hourly rate of $182.32. The Court agrees.

Under the EAJA, an award of attorney's fees "shall be based upon the prevailing market rates for the kind and quality of services furnished, except that...attorney fees shall not be awarded in excess of $125.00 per hour unless the court determines that an increase in the cost of living...justifies a higher fee." 28 U.S.C. § 2412(d)(1)(A)(ii). The EAJA compensation arrangement was last modified in 1996, when Congress set the current $125 maximum hourly rate. The Seventh Circuit has determined that "given the passage of time since the establishment of the [$125] hourly rate, a cost-of-living adjustment is warranted." *Trump v. Colvin*, No. 12 CV 6194, 2015 WL 970111, at *2 (N.D. Ill. Mar. 2, 2015) (citing *Tchemkow v. Mukasey*, 517 F.3d 506, 512 (7th Cir. 2008)).

The Seventh Circuit has since clarified the appropriate measure for calculating the cost-of-living adjustment for EAJA petitions. In *Sprinkle v. Colvin,* 777 F.3d 421 (7th Cir. 2015), the Court determined that the CPI is sufficient "proof of an increase in the cost of living" and the court "should generally award the inflation-adjusted rate according to the CPI, using the date on which the legal services were performed." *Trump*, 2015 WL 970111, at *2 (citing *Sprinkle*, 777 F.3d at 423). The *Sprinkle* decision does not necessarily create an automatic entitlement to a fee enhancement. Instead, in order to justify a higher rate, "claimants must still produce satisfactory evidence that the rate they request is in line with those prevailing in the community for similar services by lawyers of comparable skill and experience." *Sprinkle,* 777 F.3d at 428. Moreover, "courts may not award claimants inflation-adjusted rates that are higher than prevailing market rates." *Trump,* 2015 WL 970111, at *3; *see also Sprinkle*, 777 F.3d at 429 ("to avoid the possibility of a 'windfall,' courts may not award an inflation-adjusted rate that is higher than the prevailing market rate in the community for comparable legal services").

To be clear, the Commissioner does not dispute that claimant is entitled to an inflation-adjusted rate, and the evidence submitted in support of an inflated rate is sufficient here. *See Sprinkle*, 777 F.3d at 428-29 (noting that "a court may find, in its discretion, a single sworn statement from a claimant's attorney, setting forth the prevailing market rate, to be sufficient in some cases."). The Commissioner argues only that the rate should be based on the regional CPI, rather than the national CPI as Claimant urges. The *Sprinkle* Court left it to the court's discretion whether to use the national or the regional CPI when calculating the inflation-adjusted hourly rate. 777 F.3d at n.2. ("We ...leave to the discretion of the district courts whether to adopt the national or regional index in specific cases."). Since then, district courts in the Seventh Circuit have continued to calculate the enhanced rate using both the national and regional CPI, and no

8

uniform consensus has been reached on the issue. *Compare Vasquez v. Colvin*, 2016 WL 687900, at *2 (N.D. Ill. Feb. 19, 2016) *with Fox v. Colvin*, 2016 WL 5402751, at *2 (N.D. Ill. Sept. 26, 2016).

As this Court recently concluded in *Mitchell v. Berryhill*, the "regional CPI index is the appropriate factor to use when calculating the inflation-adjusted hourly rate." No. 18 CV 735, 2019 WL 764043, at *2 (N.D. Ill. Feb. 21, 2019) (awarding the regional CPI rate to attorneys from the same firm as claimant's counsel in the instant case). This is so because the hourly rate produced by use of the regional CPI best approximates the prevailing market rate in the community in which claimant's counsel performed their work. Consequently, the Court adopts the Commissioner's proposed hours rate of $182.32 based on the regional CPI.

### 2. Number of Hours

Second, the Commissioner argues that the 177.6 attorney hours expended here, specifically the 136 hours for the appeal to the Seventh Circuit, are excessive.[4] When assessing fees under the EAJA, the "court should exclude from the 'fee calculation hours that were not reasonably expended.'" *Ruiz v. Colvin*, 14 CV 69, 2016 WL 2908287, at *3 (N.D. Ind. May 18, 2016), *quoting Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). To determine whether counsel's hours were reasonably expended, the court may consider factors "such as the complexity of the case, the number and type of issues raised, and the size of the administrative record." *Cummings v. Berryhill*, No. 14 CV 10180, 2017 WL 926766, at *1 (N.D. Ill. Mar. 8, 2017). The claimant bears the burden of proving hours were reasonably expended. *Hensley*, 461 U.S. at 436.

Here, the Commissioner agrees that the 41.6 hours expended before the district court were reasonable. But the Commissioner asks the Court to cap the number of hours for work on

---

[4] The Commissioner has not taken issue with the 5.2 hours of paralegal work billed at $75.00 per hour.

claimant's appeal at 60 hours in light of the experience of the attorneys, the minimal record, and the "mine-run" issues involved. As the Commissioner accurately points out, the "standard range for hours worked on Social Security litigation in the Seventh Circuit is 40-60 hours." *Bohannon v. Colvin*, No. 15 CV 111, 2017 WL 192334, at *2 (N.D. Ind. Jan. 18, 2017); *see also Spraggins v. Berryhill,* No. 16 CV 7304, 2018 WL 661553, at *1 (N.D. Ill. Feb. 1, 2018) ("Courts in this district have routinely held that 40 to 60 hours is a reasonable amount of time for attorneys to spend working on a social security appeal."). The Commissioner candidly acknowledges that this 40-60 range serves as a guideline for cases litigated only at the district court level, and also that a Seventh Circuit appeal may indeed be more laborious than the appeal to the district court. Commissioner's Resp. at n.2; *but see Kilinski ex rel. Kilinski v. Astrue*, No. 09 CV 00716, 2012 WL 5353568, at *3 (D. Colo. Oct. 30, 2012) ("Although not a perfect comparison, taking a case to the Tenth Circuit effectively amounts to a second appeal and, accordingly, it seems reasonable to the Court for the amount of fees generated before the Tenth Circuit to roughly reflect the amount of fees before the district court."). The Commissioner maintains, however, that Claimant's attempt to recover nearly twice as much of the high-end of the guideline for the circuit court appeal is unreasonable on this record. The Court agrees.

To be clear, a review of case law in the Seventh Circuit reveals that Claimant's request for 177.6 attorney hours is not outside the very upper-end range of EAJA awards in cases that included an appeal to the Seventh Circuit. *See, e.g., Villano v. Astrue*, No. 07 CV 187, 2009 WL 1803131, at *4 (N.D. Ind. June 23, 2009) (granting award for approximately 180 hours); *Getch v. Astrue*, No. 06 CV 143, 2009 WL 89667, at *5 (N.D. Ind. Jan. 12, 2009) (granting award for 169.2 hours); *Banks v. Barnhart*, No. 01 CV 382, 2003 WL 22019796, at *5 (N.D. Ill. Aug. 26,

2003) (granting award for 143.2 hours); *Bates v. Colvin*, No. 11 CV 361, 2014 WL 2694198, at *2 (N.D. Ind. June 13, 2014) (granting award for approximately 140 hours).

Nonetheless, a review of the above enumerated factors supports a reduction of hours here. First, the record was 441 pages, only 176 of which were medical records. This is "not particularly voluminous as these records go." *Embry v. Colvin*, No. 12 C 3685, 2015 WL 4720106, at *5 (N.D. Ill. Aug. 4, 2015) (describing a 530-page record). Additionally, the issues raised by claimant related primarily to the ALJ's credibility assessment, his RFC assessment, and the treating physician rule. These types of issues are raised in almost every social security appeal. What is more, the two attorneys who billed hours at the circuit level have been working on such cases since as early as 2013 and are presumably well-versed in these common issues. Finally, claimant has failed to identify any other reasons for why his attorneys were required to bill for hours that were so far above the standard range of hours worked on Social Security appeals in the Seventh Circuit.

Though a reduction to claimant's hours is appropriate, the Court declines the Commissioner's request to cap the circuit level work at 60 hours. It is not unreasonable to assume that claimant's attorneys were required to expend considerably more hours before the Seventh Circuit than the district court. Though the issues presented to the Seventh Circuit may have been common, claimant's counsel's work on appeal was particularly effective. As explained above, the Seventh Circuit adopted all of the arguments presented by claimant, and the Court rejected the Commissioner's position with such strong language that a finding of substantial justification was precluded. Claimant's counsel reasonably incurred hours in excess of the amount typically awarded in an average appeal to obtain this result.

In balancing the above considerations, this Court, in its discretion, will reduce the compensable hours for work on appeal by 25% (from 136 to 102). As such, the resulting number of compensable hours will total 143.6, which appropriately falls in the middle range of EAJA awards for cases appealed to the Seventh Circuit. *See* Banks, 2003 WL 22019796, at *5 (143.2 hours); *Bates*, 2014 WL 2694198, at *2 (140 hours). This results in a total EAJA award of $27,064.80 calculated as follows: (143.6 attorney hours x $182.32 regional CPI rate) + $390 for paralegal time + $493.65 in costs.

III. Conclusion

For the foregoing reasons, claimant's motion for attorney fees pursuant to the EAJA is granted in part. Claimant is awarded $27,064.80 in fees and costs.

**ENTERED:**

*[signature: Jeff Cummings]*

**Jeffrey Cummings**
**United States Magistrate Judge**

**Dated: March 6, 2019**